1  JEFFREY D. WOHL (Cal. State Bar No. 096838)
   JUSTIN M. SCOTT (Cal. State Bar No. 302502)
2  W. TUCKER PAGE (Cal. State Bar No. 306728)
   PAUL HASTINGS LLP
3  55 Second Street, 24th Floor
   San Francisco, California 94105
4  Telephone: (415) 856-7000
   Facsimile: (415) 856-7100
5  jeffwohl@paulhastings.com
   justinscott@paulhastings.com
6  tuckerpage@paulhastings.com

7  Attorneys for Defendant
   Rite Aid Corporation

8

9              UNITED STATES DISTRICT COURT

10            EASTERN DISTRICT OF CALIFORNIA

11

12 | CAREN WINEGARNER, an individual,        No. 2:16-cv-01028-JAM-EFB

13 |             Plaintiff,                   **ORDER GRANTING DEFENDANT RITE AID
                                             CORPORATION'S MOTION FOR PARTIAL
14 |     vs.                                  SUMMARY JUDGMENT**

15 | RITE AID CORPORATION, and DOES 1        Date:          February 13, 2018
      through 50 inclusive,                   Time:          1:30 pm
16 |                                          Courtroom:     6, 14th Floor
                  Defendants.                 Judge:         Hon. John A. Mendez
17 |
                                             Complaint filed:  February 2, 2016
18 |                                          Trial date:       None set

19

20

21

22

23

24

25

26

27

28

1      On February 13, 2018, a hearing was held on the motion of defendant Rite Aid Corporation

2    ("Rite Aid") for partial summary judgment (ECF 26). Michael Righetti of Righetti Glugoski, P.C.,

3    appeared for plaintiff Caren Winegarner; and Jeffrey D. Wohl of Paul Hastings LLP appeared for Rite

4    Aid.

5      The Court having considered the papers on the motion, the arguments of counsel and the law,

6    and good cause appearing therefor,

7      IT IS ORDERED that Rite Aid's motion be and hereby is GRANTED, for the reasons stated by

8    the Court in the attached Reporter's Transcript of Proceedings Re: Motion for Summary Judgment (ECF

9    36).

10      Dated: February 26, 2018.

11

12 _____

                     Hon. John A. Mendez

13                   United States District Judge

14

15 Approved as to form:

16

17 /s/ Michael Righetti _____

    Attorney for Plaintiff Caren Winegarner

18

19 /s/ Justin M. Scott _____

    Attorney for Defendant Rite Aid Corporation

20

21

22

23

24

25

26

27

28

1             IN THE UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF CALIFORNIA
2           BEFORE THE HONORABLE JOHN A. MENDEZ

3    CAREN WINEGARNER,
     an individual,
4                    Plaintiff,

5    vs.                          Sacramento, California
                                  No. 2:16-CV-01028
6                                 Tuesday, February 13, 2018
     RITE AID CORPORATION and     1:48 p.m.
7    DOES 1 through 50,
     inclusive,

8
                     Defendants.
9    _____/

10

11                        --oOo--

12           REPORTER'S TRANSCRIPT OF PROCEEDINGS

13           RE: MOTION FOR SUMMARY JUDGMENT

14                        --oOo--

15   APPEARANCES:

16   For the Plaintiff:          RIGHETTI GLUGOSKI
                                 BY:  MICHAEL C. RIGHETTI
17                                    Attorney at Law
                                 456 Montgomery Street, Suite 1400
18                               San Francisco, CA  94104

19   For the Defendant Rite Aid: PAUL HASTINGS LLP
                                 BY:  JEFFREY D. WOHL
20                                    Attorney at Law
                                 101 California Street, 48th Floor
21                               San Francisco, CA  94111

22   Official Court Reporter:    Kacy Parker Barajas
                                 CSR No. 10915, RMR, CRR, CRC
23                               501 I Street
                                 Sacramento, CA  95814
24                               kbarajas.csr@gmail.com

25   *Transcript produced by computer-aided transcription.*

1        SACRAMENTO, CALIFORNIA, TUESDAY, FEBRUARY 13, 2018, 1:48 PM

2                              --oOo--

3                THE CLERK:  Calling 16-1028, Winegarner versus Rite

4        Aid Corporation.

5            Counsel approach and state their appearances, please.

6                MR. RIGHETTI:  Good afternoon, your Honor.  Michael

7        Righetti here on behalf of the plaintiff, Caren Winegarner.

8                THE COURT:  Good afternoon.

9                MR. WOHL:  Good afternoon, your Honor.  Jeffrey Wohl

10       for defendant Rite Aid Corporation.

11               THE COURT:  Good afternoon.  All right.  This is on

12       this afternoon on Rite Aid's motion for partial summary

13       judgment.  Specifically Rite Aid seeks partial summary judgment

14       on four issues:  1.  Rite Aid argues that plaintiff may not

15       recover overtime wages or other relief under a first cause of

16       action, violation of Labor Code for the period before

17       February 2nd, 2013, which would be three years before she

18       commenced this lawsuit.  2.  That the plaintiff may not recover

19       overtime wages or other relief under her second cause of

20       action, violation of Business and Professions Code section

21       17200 for the period before February 2nd, 2012.  That would be

22       four years before she commenced this lawsuit.  3.  That

23       plaintiff may not recover meal and rest period premiums for the

24       period before February 2nd, 2013, in that case three years

25       before she commenced this action.  So there's a statute of

1   limitations argument on those three issues, and then there's a

2   separate issue as to whether plaintiff should be allowed to

3   recover meal and rest period premiums under California

4   Labor Code section 226.7 through her California Business and

5   Professions Code section 17200 claim, her second claim.

6        So those are the four issues before the Court.  The matters

7   have been thoroughly briefed.  The Court has reviewed the

8   briefs, as well as a number of other cases that I want to

9   discuss with the lawyers this afternoon.

10       Mr. Righetti, on the statute of limitations issue, you

11  attempt to distinguish a case that the defendant relies on.  I

12  think it's pronounced Batze, B-a-t-z-e, versus Safeway.  You

13  don't say a lot.  Then on page 10 of your brief you argue that

14  it was based on substantially different facts and procedural

15  history than the present case, and you go on to try to

16  distinguish that case.

17       I didn't see that case to be substantially different than

18  what's before me in the present case.  I found it to be

19  actually pretty persuasive.  If that is my view of that case,

20  is there any other basis that you think would entitle your

21  client to a tolling under I think it's American Piping

22  Construction Company which you argue your client should be

23  entitled to?  I know you also talk about Fenley and how -- and

24  you submitted a declaration from your client trying to explain

25  why I should toll the statute because of that case as well.

1      So I don't want you necessarily to repeat the arguments,

2 but I did want to give you an opportunity to sort of respond to

3 the reply filed by the defendant in which they basically argued

4 you didn't do a good enough job of distinguishing that case and

5 that it's clear that tolling shouldn't apply in this case.

6      MR. RIGHETTI:   Thank you, your Honor.   That is what I

7 wanted to start with is responding to the reply specifically.

8 I don't think -- the defendant attacks the plaintiff for not

9 addressing Batze or trying to avoid the Batze case.   I don't

10 think we're trying to avoid the Batze case.   But the factual

11 record that existed in the Batze case is not before this Court,

12 and that was a motion for summary judgment as well where the

13 Court looked at the facts and the evidence in that case and the

14 class certification proceedings in that case, and all that the

15 Court did there was use the factors set forth in Jolly versus

16 Eli Lilly and American Pipe and applied those factors to the

17 facts and the evidence in the Batze case.

18      THE COURT:   Here's what they say in the reply.   In the

19 opposition, plaintiff refuses to acknowledge, let alone rebut,

20 the presumption against American Pipe tolling under California

21 law when class certification is denied on lack of commonality.

22 Plaintiff instead claims there is no such presumption.   But in

23 Batze versus Safeway, the Court of Appeal could not have been

24 clearer.   Quote, here class certification was denied due to

25 lack of commonality giving rise to a presumption that American

5

1   Pipe tolling should not apply, citing the case, and then

2   there's a footnote about how they also think that you quibble

3   with the term "commonality," and you contend that certification

4   in Fenley was denied not based on lack of commonality but

5   rather the conclusion that common questions of fact and law did

6   not predominate.  I interrupted you.  Sorry.  Go ahead.

7        MR. RIGHETTI:  No problem, your Honor.  And I think

8   it's -- this was an interesting issue to brief because we've

9   been litigating these cases now for so many years, and it was

10  actually sort of fun and interesting to brief an issue that is

11  different from, you know, the dozens and dozens of issues that

12  we've been briefing all along in the four or five years we've

13  been litigating these cases.  So that was, in and of itself,

14  different which was interesting and got to learn about a

15  different issue of California law.  But we're not trying to

16  avoid Batze.  The only thing that Batze did was take those

17  principles of Jolly versus Eli Lilly and applied them to the

18  facts and evidence there.  We need to apply those same two

19  factors to the facts and evidence that exist in plaintiff Caren

20  Winegarner's case.

21        THE COURT:  Okay.

22        MR. RIGHETTI:  Because the defendant, they're

23  advocating for a bright line rule that in all wage-and-hour

24  class actions that are denied for a lack of commonality.  And

25  there are a lot of class certification decisions in California,

1 whether it's state or federal court, that are ultimately denied

2 for a lack of commonality. If this Court and other district

3 courts where they will trot this argument out in the other Rite

4 Aid cases state there's no tolling where there's a class

5 certification decision that's based on lack of commonality,

6 what will ultimately end up happening is the class

7 certification tolling principles will be turned on their head.

8 That's one point that we tried to make is you will essentially

9 be saying any class member in a class action would need to move

10 to intervene right away or file their own individual case at

11 the outset in order to protect their interest in the ultimate

12 event that there's a decision that's denied for lack of

13 commonality.

14          THE COURT:  I didn't read the motion that way though

15 because I think they obviously threw that -- there were four

16 factors that they asked me to decide.  They throw that front

17 and center as one of the most important factors, but I don't

18 think they're saying that's the only factor here.  It is one

19 factor.  It's a factor that cuts against you.  But I don't

20 think any court would go so far as to say just because a court

21 denied class cert on the basis of commonality that's it.  And I

22 didn't read Rite Aid's argument to be just that.  I'm looking

23 at page 2 of their reply, and they actually talk about four

24 factors.  It's just one of the factors that I thought cut

25 against you.

1          MR. RIGHETTI:  And if I can get to the two main

2     factors that really are discussed in American Pipe, Jolly

3     versus Eli Lilly, and the Batze case are the foreseeability

4     issue.

5          THE COURT:  Right.

6          MR. RIGHETTI:  And the notice issue, whether the

7     defendant was put on notice.  And if we look at those two

8     issues, that's what our opposition really focused on.  If we

9     look at foreseeability, I set forth several decisions from

10    district and state courts granting class certification on

11    behalf of this very same group of employees just for a

12    different time period.  The plaintiff in this particular --

13    against whom this motion is filed was a class member in that

14    case and participated in the settlement in that previous case.

15    So if we're talking about whether the denial of class

16    certification was foreseeable, which is one of the very first

17    principles that we have to look at, how can the Court rule that

18    applying the foreseeability factor to the facts in the record

19    in this case that the plaintiff Caren Winegarner should have

20    foreseen that class certification would be denied.

21         That principle stemmed from a mass tort action where it was

22    reasonable to deny tolling based on foreseeability where

23    there's such a great disparity in the facts and evidence in

24    mass tort actions.  That was specifically a DES mass tort

25    claim.  So that's where that principle came from.  Where it is

1    not foreseeable that you should be able to have a class action,

2    yeah, you should -- you should be put on notice that you've got

3    to intervene in the case right away in order to protect the

4    statute of limitations.

5            THE COURT:  Here's the answer to your question.  You

6    can respond to it.  In making the lack of foreseeability

7    argument, plaintiff asked this Court simply to ignore the fact

8    that plaintiff's own counsel filed dozens of individual cases

9    on behalf of punitive class members during the pendency of

10   Fenley.  In fact, the filing of such individual actions by

11   punitive class members is the first consideration to be

12   addressed when analyzing whether to override the presumption

13   against tolling, and then it goes on to cite Batze, so they

14   kind of throw it back on you.

15           MR. RIGHETTI:  It's a red herring, your Honor.  The

16   fact that 14 other class members decided to file their own

17   individual claims because they wanted to move forward, we've

18   got to put this all in context, all right?  The Fenley case was

19   ongoing, and I started representing 14 individuals separately

20   from the class action.

21           THE COURT:  Right.

22           MR. RIGHETTI:  Mr. Wohl and Paul Hastings, I don't

23   mean to address my colleague by name, but my opposing counsel

24   filed motions to stay all of those cases because they didn't

25   want to litigate the individual claims simultaneously while

1   they were litigating the class action.  So I had to go out and

2   get declarations from my client saying, hey, we don't want to

3   participate in the class action.  We want to proceed with our

4   own individual claims as they have a right to do.

5       The fact that they did that, the fact that certain

6   individuals decided to proceed on an individual basis does not,

7   in and of itself, mean that denial was foreseeable.  They moved

8   to intervene and filed their own claims -- they didn't move to

9   intervene.  They filed their own claims years before the Fenley

10  case was denied certification.  They didn't file their own

11  cases after they got the denial.  They just didn't want to

12  participate in that case.  And just because you have 14

13  individual cases substantially with a class action doesn't mean

14  denial of class certification is foreseeable.  And that's --

15  they're trying to link those two things up, and there's no

16  logical connection between the two.  You just have 14

17  individuals who decided, for whatever reason, way before the

18  class cert was denied that they wanted to have their own

19  claims.

20      There's a lot of reasons why people don't want to be in a

21  class action.  One, if you end up getting a settlement, the

22  recovery is oftentimes a lot worse than you otherwise would

23  have if you had your own case.  You get to control your

24  litigation.  You get to make decisions.  You get face time with

25  your counsel.  There's all kinds of reasons why you don't want

1    to participate in a class action.  The fact that you have those

2    cases doesn't mean it was foreseeable that cert would be

3    denied.

4       We have to focus on whether class certification denial was

5    foreseeable, and that is why I put forth all of the other

6    cases.  Fenley was the only case that was denied cert on this

7    issue.  Every other case cert was granted.  How can we say that

8    denial was foreseeable?  That's the point I wanted to make on

9    foreseeability.  I wanted to emphasize that.  The second is the

10   notice issue.  The second factor is whether --

11          THE COURT:  I don't have any questions about that.  I

12   understand your argument.  The other question I had is if you

13   can explain to me why Fenley was -- class cert was denied on

14   July 2nd, 2014, why did it take 18 months after the denial of

15   class cert for your client to file this lawsuit, and how is

16   that not prejudicial to Rite Aid, as they argue?  People

17   disappear.

18          MR. RIGHETTI:  Her declaration states --

19          THE COURT:  I know what her declaration states but --

20          MR. RIGHETTI:  She wasn't given notice of the

21   denial.

22          THE COURT:  But you were.

23          MR. RIGHETTI:  I wasn't given notice.  Well, right.

24   But I didn't represent her.  I didn't represent every -- I

25   wasn't counsel in that class action.  I hope your Honor

1   understands that.  I was not the lawyer that represented the

2   punitive class in Fenley.

3          THE COURT:  No.  You represented the individuals.

4          MR. RIGHETTI:  I represented the individuals.  So when

5   I got denial -- when I heard about the denial of class cert in

6   Fenley --

7          THE COURT:  Right.

8          MR. RIGHETTI:  -- I didn't represent -- other than my

9   14 individuals, I didn't represent any of the punitive class

10  members in Fenley.  Ms. Winegarner, the plaintiff in this case,

11  did not learn about the denial of class certification in Fenley

12  until -- well, her declaration states it was like less than

13  three weeks or something before she filed her case.

14         THE COURT:  She was aware of the litigation.

15         MR. RIGHETTI:  She was aware of the fact that a class

16  certification complaint had been filed because you had the

17  previous class action where she received a settlement in that

18  case.  Then you have the new case filed.  They send out these

19  Bel Air letters which you know about.  She gets a Bel Air

20  letter.  She gets calls from lawyers, the plaintiffs' counsel

21  in the Fenley case.  She could have even received a call from

22  the defense lawyer during their investigation.  They got a lot

23  of declarations from punitive class members in that case that,

24  you know, highlighted why there may have been lack of

25  commonality individualized issues.  So both sides are going out

1   and interviewing class members.  That's how she heard about the

2   case.  What they didn't tell them was that cert had been

3   denied, and that's what I think is really what this could be

4   about is the notice issue.  And actually for current employees,

5   they go out and get cert denied.  They're a current employee of

6   the company against whom the litigation was filed, and they

7   don't tell anybody, hey, cert's been denied, and if you want to

8   participate or if you want to protect your rights, you've got

9   to move.  No one tells you that.  And you sit there and you

10  say, well --

11          THE COURT:  Shouldn't the lawyers be telling both

12  class members and punitive class members?

13          MR. RIGHETTI:  Well, a lot of times for whatever

14  reason the Court will order parties to send out a letter

15  providing notice to punitive class members that there's been a

16  denial of certification.  Judge Kirwan in that case did not do

17  that.  Mr. Wohl may be able to explain why.  He was the defense

18  counsel in that case.  I don't know why.  I wasn't there.  I

19  wasn't a part of the case.  All I know was Ms. Winegarner

20  retained me to represent her when she learned about the fact

21  that cert had been denied, and we moved right away to file her

22  claim.  She didn't sit on her rights.  That's what the

23  declaration explains.

24          THE COURT:  Okay.  Mr. Wohl, you want to respond to

25  any of that?

13

1      MR. WOHL:  Yes, your Honor.  Thank you.  Mr. Righetti

2   is simply fighting with Batze because the same facts in Batze

3   exist here.  Class cert was denied after numerous, in fact I

4   think it was a few hundred individuals had filed their own

5   claims.  The court said that was extremely significant to show

6   that it was foreseeable the class certification would be

7   denied.

8      In this case actually there were 23 plaintiffs that

9   Mr. Righetti represented filing their own claims before Fenley

10   class certification was denied.

11      Number two, although claimant does say that she was aware

12   of the Fenley case, she doesn't actually say she was aware of

13   the Tierno case.  We're sort of operating this assumption she's

14   a Tierno class member, but there actually is no evidence --

15      THE COURT:  Slow down.

16      MR. WOHL:  I'm sorry.  There's no evidence before the

17   Court that says she actually was a Tierno member.  But in any

18   event, even if she were, that's even more reason why she knew

19   she had a responsibility to at least track Fenley if she wanted

20   to protect her rights, and there's no dispute that even though

21   she says she was aware of Fenley, she just did nothing about

22   it.  And therefore, no dispute that she waited a year and a

23   half to file her lawsuit.

24      So the presumption is real because that's what Jolly says.

25   That's controlling.  The same facts exist here that existed in

1   Batze.   The California Court of Appeal said that was enough to

2   not overcome the presumption.  So therefore, your Honor, we do

3   think it's very clear cut here that tolling does not apply.

4   And also to emphasize that does not mean she has no remedy in

5   court.  She just has a shorter limitations period to sue on.

6               THE COURT:  Right.  You put that in the footnote.

7               MR. WOHL:  Yes.

8               THE COURT:  I want to switch to the other issue which

9   is only an issue that lawyers and judges can love.  But it's

10  interesting.  I know you guys have probably dealt with this,

11  and you've dealt with it apparently through a number of

12  district courts and some court of appeals in the state side.

13  Hopefully the Ninth Circuit or the California Supreme Court at

14  some point will give us some guidance on this.

15      Mr. Righetti, your first argument on the 17200 motion,

16  whether the meal and rest period premiums are recoverable under

17  17200 as restitution is this estoppel argument.  Before I get

18  to that, again in a footnote, Rite Aid makes mention of the

19  fact that you could have avoided all this 17200 argument by

20  simply bringing a 226.7 claim, and that was sort of my first

21  question.  Why didn't you do that, or why wouldn't you do that

22  to avoid this whole motion under 17200.  Mr. Wohl seems to

23  presume it's because there's a four-year statute of limitations

24  rather than a three-year statute of limitations.

25              MR. RIGHETTI:  That's precisely the reason.

1   There's -- there was a law firm in San Francisco who were sued

2   for malpractice for bringing a wage claim as -- under the

3   Labor Code because your statute of limitations is only three

4   years when they should have brought it -- well, maybe not

5   should have but ultimately they should have because the court

6   found hey you could have brought that as a 17200 claim.  You

7   missed out on a full year.  So then they went after the

8   plaintiff's firm for not seeking all available remedies.

9           THE COURT:  Damned if you do and damned if you don't.

10          MR. RIGHETTI:  Yes.  So that's what you do, you bring

11   it as -- in an effort to maximize the statute of limitations

12   and maximize the available recovery.

13          THE COURT:  Have you ever brought both claims in a

14   complaint just to protect yourself out of an abundance of

15   caution, filed both a Labor Code claim and the 17200?

16          MR. RIGHETTI:  Yes.  And that's what we're doing again

17   now.  The other -- the other issue about this, I think it

18   pertained to whether there was an automatic right to recover

19   attorney's fees if you prevailed on the issue, whether you

20   could do it under the Labor Code, but you do it under

21   restitution.

22          So at one point, you know, the plaintiffs' bar -- I don't

23   recall exactly.  I would probably would have to speak to my

24   superiors, Mr. Righetti and John Glugoski, who would be able to

25   say, Mike, yeah, you know the answer to that question, but

1    it's -- I'm spacing on the actual answer, the correct

2    interpretation of the law on that.

3           THE COURT:  And wasn't Kirby really more an attorney's

4    fees issue.  You mention that but --

5           MR. WOHL:  Yeah.

6           THE COURT:  -- it addressed whether you're entitled to

7    attorney's fees.

8           MR. WOHL:  That is correct, your Honor.  In the Kirby

9    case the Supreme Court said that if you're suing under

10   Labor Code 226.7, you cannot recover attorney's fees because

11   that's not deemed to be an action for wages which we think

12   actually therefore further supports our position.  Mr. Righetti

13   is correct there's no absolutely clear, crisp appellate

14   authority on this point.  We do think the Ling versus PF

15   Chang's China Bistro case certainly provides some support.

16   That was the case that said that waiting time penalties can't

17   be based on failure to pay premiums upon termination because

18   premiums are not wages for purposes of section 203.  There is

19   definitely a split in case authority.  We tried to be as

20   forthcoming about that as possible.

21           THE COURT:  I'm going to cut you off because I do read

22   the briefs.

23           MR. WOHL:  Yes.

24           THE COURT:  I want to get back to first the estoppel

25   argument.  Again, I wasn't necessarily persuaded that this is

1    an estoppel situation given that there's so many different

2    opinions out there.  And again I know you disagree, but it's

3    actually referred to offensive nonmutual collateral estoppel.

4    But I didn't find that to be persuasive in terms of preventing

5    summary judgment on this claim.

6        And then we've got opinions all over the place.  The one

7    opinion, Mr. Wohl, that I'm not sure you actually addressed was

8    out of the Northern District, and I think it was the same judge

9    who actually reversed himself, Judge Tigar.  He initially

10   issued an opinion which you cite that was favorable to your

11   argument, but then he issued this case.  It's called -- and I'm

12   sure you're familiar with it.  I don't know if you actually

13   argued it or not.  Doesn't look like it.  It's spelled

14   A-z-p-e-i-t-i-a versus Tesoro Refining & Marketing Company.

15   And it's again Judge -- I think it's pronounced Tigar,

16   T-i-g-a-r, where he reversed himself in the conclusion he

17   reached in Parson.

18       I don't know if you actually addressed that in your reply.

19   I didn't necessarily see it.  I wanted to give you an

20   opportunity to address that opinion.  It's one of several other

21   district court cases that are cited by the plaintiff.  I'm not

22   sure if the plaintiff cited it, but there are a number of cases

23   that were cited in which district courts have found against the

24   argument you're raising, and there are a number of district

25   courts that have found in favor of the argument raised.  I'm

1   well aware of that.  Even within our own district Judge Miller

2   has one opinion, and Judge O'Neill has another opinion.  But I

3   didn't know if you had looked at that case and whether you had

4   anything that you wanted to say with respect to that case.

5        MR. WOHL:  I appreciate that, your Honor.  But I will

6   acknowledge I'm not familiar with that case.  I don't think it

7   was cited in the opposition.  I apologize that we did not pick

8   up on that.  So I don't really have anything to say about that

9   case.

10        THE COURT:  Okay.

11        MR. WOHL:  But I just want to reiterate the point.

12        THE COURT:  Because you do mention Parson.

13        MR. WOHL:  Yes.  I'm sorry.  If he cited Parson, then

14   of course we should have referenced that case as well, and I'm

15   just at a loss to address that.  I would be happy to submit

16   something supplemental if you're interested.  And of course

17   Mr. Righetti could do the same.  But I think to me when I think

18   about the issue the most persuasive about this is the nature of

19   the premium is unrelated to the concept of working.  A wage is

20   by definition money or other consideration for working.  And

21   the unique feature of a premium rather for meal periods or rest

22   periods is that it's not related to whether you worked or

23   not.

24        THE COURT:  It's the argument you raised in your

25   opening.

1          MR. WOHL:  That's right.

2          THE COURT:  I read your brief.  You can assume I've

3     read the briefs.

4          MR. WOHL:  Thank you, your Honor.  You've demonstrated

5     that fully.  So very short, that to me is extremely meaningful.

6     And also in the Murphy case, which is what the plaintiffs

7     always emphasize, I think the Court was not proclaiming it's a

8     wage for all purposes.  It was just saying for statute of

9     limitations purposes.  It more resembles a wage rather than a

10    penalty, and therefore it's three years versus four years.

11         THE COURT:  Mr. Righetti, I do want to pick up on

12    that.  In thinking about this conceptually, honestly I did find

13    that argument to be persuasive.  I think Judge O'Neill found it

14    to be somewhat persuasive as well.  And I understand that other

15    district courts have looked at this differently.  But that

16    argument in the opening brief seemed to ring true to me which

17    is this is -- this is a -- it's not a wage in the sense of

18    someone does some work, and they are owed money.  It's a

19    payment that an employer would have to make, as Mr. Wohl

20    argues, for not doing something, for not giving that person

21    either their meal break or their rest break.  And if that's --

22    and then there's language in the cases that talk about it's for

23    health reasons.  It's not so people can make money because they

24    perform some service.

25         And then Mr. Wohl argues about how if you work a certain

1          period of time, you make a distinction between working for

2          eight minutes or working for 22 minutes in the same case,

3          you're still going to get the premium awarded to you.  All that

4          seems persuasive to me, and I want to give you an opportunity

5          to address that.  Because conceptually when I think about this

6          issue, that seems to make sense to me.  17200 wasn't designed

7          for -- I mean, it's designed to award restitution where someone

8          has been enriched.  Someone has done something unlawful,

9          illegal, fraudulent, and it's a creative argument and obviously

10         has rung true with respect to several district court judges, as

11         I've said.  And I somewhat understand the rationale behind

12         those decisions.  But this is in front of me for the first

13         time, and I'm obviously seeing myself finding that argument to

14         be persuasive where it shouldn't be a 17200 claim, as much as I

15         know you're in a difficult position because of the four-year

16         statute of limitations as opposed to the three-year statute of

17         limitations.  It doesn't make a lot of sense to me if counsel

18         can bring a claim under the Labor Code, why are we arguing over

19         trying to fit this round peg or square peg into a round hole?

20         There's a way for plaintiffs to maintain these claims.  Why are

21         we trying to force it into a 17200 through creative arguments?

22         That's sort of where I'm leaning.  I want to give you an

23         opportunity to address that.

24                  MR. RIGHETTI:  Couple things to say in response to

25         that, the body of law behind 17200 has been around for, I don't

1    know, decades and decades, and when you have the statutory

2    predicate for an illegal practice under the Labor Code, you can

3    bring that.  That's the predicate for the 17200 claim.

4            THE COURT:  Yeah.  But all those cases also though

5    always talk about injunctive relief or restitution.  It never

6    talks about damages, and that's why I see this square peg into

7    a round hole type of problem.

8            MR. RIGHETTI:  We've brought our overtime claim also

9    as a 17200 claim, same thing, and in all of these cases that's

10   what you find.  And a lot of times --

11           THE COURT:  Yeah.  But they're working overtime.

12           MR. RIGHETTI:  They're also working through what would

13   otherwise be a protection under the Labor Code that should be

14   provided.

15           THE COURT:  But again, then the issue is was it their

16   choice or not their choice?

17           MR. RIGHETTI:  Well, now we're getting into the merits

18   of whether somebody was given a meal period or not.  The remedy

19   for that is one hour of pay, and that's set by the Legislature.

20   Now it sounds like your Honor is construing that to be more of

21   a penalty that's applicable to the employer, but that's

22   directly contrary to what the --

23           THE COURT:  They called it a premium, but they could

24   have used the word penalty.  I mean, they really could have.

25           MR. RIGHETTI:  But the courts of appeal have said that

1    the premium wage is a wage, and it's not a penalty.  So if the

2    Court's going to construe it as a penalty, that is contrary to

3    what the courts of appeal and California Supreme Court have

4    said it is not.  It is not a penalty.  It is a wage.  And the

5    issue is, well, what is the context in which they said that.

6    There it was a statute of limitations context.  Mr. Wohl is

7    bringing it up in the sense of an attorney's fee context.  No

8    one's brought it up in the sense of, well, what is really --

9    you know, did the employee earn that money or not.  And the

10   decisions where they found that the employee earned it was they

11   had to work through something that they should have been

12   provided.  So yes, they did earn it because they weren't given

13   the opportunity to either rest or have a meal.  So they did

14   work through it.  It's just they're not getting paid an amount

15   per hour for the amount of time that they had to work during

16   their break.  They're getting paid what the Legislature has

17   said is one hour of pay.

18            THE COURT:  Here's what the defendant argues.

19   Labor Code section 203, waiting time penalties that were at

20   issue in the Pineda case.  It's an employer's action or

21   inaction, not an employee's labor that gives rise to the

22   section 226.7 premiums.  Indeed section 226.7 ordains that an

23   employer owes one hour of pay for each violation does not

24   require a commensurate one hour of labor by the employee.

25            The same is true where an employer owes a premium for a

1   late meal period.  For instance, if a nonexempt employee works
2   eight hours but is not provided a meal period until after the
3   sixth hour, a premium is owed.  If the same meal period is
4   provided between the third and fourth hours, however, no
5   premium is owed.  In both scenarios the employee performs the
6   same amount of labor if a premium is owed and only in the first
7   scenario.

8        Finally, the same is true where an employer owes a premium
9   for an interrupted meal period.  For example, if an employee's
10  meal period is cut short one day after 15 minutes by an
11  employer direction to return to work and then cut short another
12  day after 25 minutes by an employer direction to return to
13  work, the same premium is owed in both situations, even though
14  the employee lost 15 minutes of break in the first scenario and
15  only five minutes of break in the second scenario.  It's
16  evident that the purpose of section 226.7, premium is not to
17  compensate an employee for labor performed.  I just found that
18  to be logical and persuasive.  What's illogical about that?

19        MR. RIGHETTI:  You can't sit here and argue with the
20  math, all right?  I can't say, well, somebody worked on the
21  sales floor for a certain period of time, got this much money
22  but didn't get a meal period, then they automatically get an
23  extra hour of pay, even though they only worked for seven
24  hours.  I mean, no one's going to sit here and tell your Honor,
25  well, the math is wrong.  I can't do that either.  But the

1    Legislature has determined that the remedy for that situation

2    is to pay the employee an additional hour of pay for having to

3    have worked through or not been provided something that the

4    employer is required to provide under the Labor Code.

5        There's nothing -- you know, why it is one hour of pay

6    versus the actual amount of time that they, you know, worked

7    versus were interrupted, that I don't know.  I don't know why

8    they said it was one hour versus, hey, let's go back and look

9    at what the record showed to see how much work they actually

10   performed.  It's much easier I supposed to just give them one

11   hour of pay.

12             THE COURT:  Sounds like a liquidated damage, right?

13             MR. WOHL:  That's what I think.

14             MR. RIGHETTI:  It's a -- well, we can call it I guess

15   what we want to call it, your Honor.  I don't know how to

16   respond to the fact, you know, your Honor wants to call it a

17   liquidated damage.  Mr. Wohl wants to call it a liquidated

18   damage.  I look at the cases different.  I look at what the

19   Court said in Cortez, and what restitution is and how they

20   define it, and I'm persuaded otherwise.  So --

21             THE COURT:  Okay.  I understand.

22             MR. RIGHETTI:  I put the authority before your Honor,

23   and that's why you get to make the decisions.  That's why

24   you're up there.

25             THE COURT:  Okay.  Mr. Wohl, anything further that you

1    want to add?

2              MR. WOHL:  No, your Honor.  Just to be clear it's not

3    a penalty.  We do think it's akin to liquidated damages.

4              THE COURT:  And Mr. Righetti, anything further that

5    you want to add?

6              MR. RIGHETTI:  Your Honor, if I might go back to the

7    previous issue, I know we kind of addressed that.

8              THE COURT:  Go ahead.

9              MR. RIGHETTI:  The last thing that I want to say about

10   that issue with regard to tolling is the way that we see the

11   defense argument is that they're suggesting to the Court that

12   it wouldn't be fair to them for the Court to find tolling

13   because there would be -- you know, in this case I think

14   there's 900 other punitive class members or 1,300 or however

15   many there are, then they would have had to preserve evidence

16   as to every single one of these people, and we would never

17   know.  We don't know who is going to come forward.  That is a

18   sort of, you know, quote, unquote, a hysterical argument about

19   the worst-case scenario about what might potentially happen,

20   but that's not what we're really here to talk about.  We're

21   talking about the plaintiff, Caren Winegarner.  They haven't

22   come forward and said they don't have records, they didn't know

23   who she was, they didn't know that she was going to come

24   forward.  They have the evidence.  They've produced all of the

25   records about her in this case, all of her training records,

1    all of her payroll records, all of the labor budget information

2    of the stores where she worked, and that's because they've

3    preserved all of those records.  And they preserved all of

4    those records presumably because they keep getting sued over

5    this stuff, and they keep having to litigate it.

6        So it goes back to this situation of, well, if we're really

7    talking only about the plaintiff, Caren Winegarner, and we're

8    talking about the prejudice that the defendant might face, I

9    just think the Court should really focus about this plaintiff

10   and not what might happen with respect to the 900 other people

11   who haven't filed claims and are not before the Court.  We're

12   only talking about Caren Winegarner.

13       MR. WOHL:  And your Honor, very briefly, again the

14   same issue was addressed head on in Batze.  The Court did

15   proclaim that was the principle, and if there were a different

16   case, if the plaintiff in the new case figured in the class

17   action case, that's when the defendant was really on notice and

18   that she acted really quickly to preserve her rights, sure

19   there could be a different outcome.  But this case is not that

20   case, and this case is like the Batze case.  And that does

21   address Mr. Righetti's point head on.

22       THE COURT:  Okay.  I am prepared to rule on the

23   motion.  I'll go through this with all of you.  In terms of the

24   facts involved in this case, Ms. Winegarner worked as a Rite

25   Aid store manager from approximately December 2007 to November

1   2014.   During her work as a store manager she, according to her

2   complaint, was classified as an exempt employee and paid a

3   salary for all hours worked.

4        She alleges in her complaint that the categorization of her

5   as an exempt employee is incorrect and that resulted in her

6   being denied overtime compensation.   She further alleges that

7   she was denied mandated meal and rest breaks, and as a result

8   of her exempt categorization and denied breaks, she alleges

9   that Rite Aid did not pay her all of her earned wages.

10       Ms. Winegarner does assert that she was an unnamed, absent

11   class member in Fenley versus Rite Aid Corp., a punitive class

12   action that was filed back on July 25th, 2012.   That court

13   denied class certification on July 2nd, 2014.

14       The Fenley plaintiffs sought unpaid overtime, associated

15   penalties, and meal and rest period premiums.   Ms. Winegarner

16   commenced this lawsuit before this court on February 2nd, 2016.

17   In her complaint she alleges three violations of the California

18   Labor Code and Business and Professions Code.   Rite Aid has

19   challenged and brought this, the motion for partial summary

20   judgment alleging or arguing that Ms. Winegarner's claims are

21   precluded in part by the statute of limitations, and in

22   addition Rite Aid has argued that Ms. Winegarner may not

23   recover restitution for unpaid labor under Business and

24   Professions Code section 17200.

25       Rite Aid's primary contention in the motion for partial

1 | summary judgment as to the statute of limitations portion is
2 | that her claims are partially time barred by applicable statute
3 | of limitations.

4 | For claim 1 Rite Aid argues that Ms. Winegarner may not
5 | recover for wages or relief for the period before February 2nd,
6 | 2013.

7 | For claim 2, Rite Aid asserts that she may not recover
8 | overtime wages or other relief for the period before
9 | February 2nd, 2012.

10 | And Rite Aid argues that she may not recover meal and rest
11 | period premiums for the period before February 2nd, 2013.

12 | This issue hinges on whether Ms. Winegarner qualifies for
13 | tolling under American Piping Construction Company versus Utah,
14 | a 1974 U.S. Supreme Court case.  The Court borrows equitable
15 | tolling rules of the forum state, California, when looking at
16 | this issue.  The California Supreme Court summarized the
17 | American Pipe tolling rule as follows in the Jolly versus Eli
18 | Lilly and Company case.  The California Supreme Court wrote,
19 | quote, under limited circumstances, the class certification is
20 | denied.  The statute of limitations is tolled from the time of
21 | commencement of the suit to the time of denial of certification
22 | for all purported members of the class who either make timely
23 | motions to intervene in the surviving individual action or who
24 | timely file their individual actions.

25 | Jolly was a mass tort action in which the California

1  Supreme Court declined to apply the American Pipe tolling
2  doctrine.   The California Supreme Court advised that there
3  should be a presumption that lack of commonality will defeat
4  certification and preclude application of the American Pipe
5  tolling doctrine.

6      Jolly's rationale asked the Court to consider two major
7  policy considerations.   First, would tolling protect the
8  efficiency and economy of the class action device.   And second,
9  does tolling conflict for the purposes of the statute of
10  limitations.

11      As discussed in the briefs and as we discussed here today,
12  there are a number of factors that this Court is required to
13  look at with respect to the tolling issue.   In the reply brief,
14  those are discussed on page 1 of the reply talking about Batze,
15  B-a-t-z-e, and the factors.   There are factors -- four factors
16  as follows:  1.  Is there a presumption against tolling or
17  class certification was denied based on lack of commonality.
18  2.   Whether the defendant retailer was not effectively put on
19  notice regarding the identities of eventual plaintiffs when the
20  punitive class was large and statewide threatening material
21  prejudice to the retailer if tolling applied.  3.   The filing
22  of numerous individual actions during the pendency of the class
23  action, did that in fact demonstrate that the denial of class
24  certification was not unforeseen, so foreseeability is an
25  issue.   Then finally, a filing delay in this case of over a

1  year, almost 18 months following denial of certification, was

2  that or is that also unreasonable?  Does that somehow add to

3  the prejudice to respondent or of defending stale claims?

4       In terms of the presumptions against tolling in the absence

5  of commonality, I do find that the defendant Rite Aid has the

6  better argument with respect to that factor primarily based on

7  the language in Batze and the Batze case which the Court found

8  was a persuasive authority almost on all fours with respect to

9  the case before this Court.

10       Ms. Winegarner's opposition to this argument argues --

11  includes argument that the Fenley finding that a common issue

12  of fact and law did not predominate is different than lacking

13  commonality.  Rite Aid argues and the Court agrees that this is

14  incorrect.  California courts rely on the language of the Code

15  of Civil Procedure section 382 and federal precedent in

16  articulating class certification requirements.  Section 382

17  requires a well-defined community of interest which embodies

18  three factors.  Those factors are predominant common questions

19  of law or fact, class representatives with claims or defenses

20  typical of the class, and class representatives who can

21  adequately represent the class.

22       Federal class actions similarly require questions of law or

23  fact common to the class referred to as the commonality

24  requirement.  Thus the variation between common question of law

25  and fact and commonality requirement is a distinction without a

1    difference.   The lack of commonality finding in Fenley as

2    discussed in Batze clearly weighs against tolling, weighs in

3    favor, that factor weighs in favor of Rite Aid's argument.

4        A second factor is whether the denial was unforeseen.   The

5    second part of the inquiry specifically into whether tolling

6    protects the class action device, the Court must consider

7    whether denial of the class certification was unforeseeable by

8    class members.   Foreseeability is judged by whether the denial

9    was premised on subtle factors or whether potential class

10   members filed protective motions in anticipation of the

11   negative ruling on certification.   The filing of protective

12   motions deprives class actions of the efficiency and economy of

13   litigation which is a principle purpose of the procedure.

14       In American Pipe, the U.S. Supreme Court held that tolling

15   should apply where the decision to deny class action was made

16   based on subtle factors such as experience with prior similar

17   litigation or the current status of the Court's docket.   In a

18   footnote the Court went on to further explain that a subtle

19   factor when the trial court judge based on his prior experience

20   with litigation against the same defendants found that the

21   number of potential class members was not so large as to make

22   joinder impracticable.   Such a factor was not foreseeable by

23   potential class members.   The Supreme Court reasoned in

24   American Pipe.

25       California courts of appeal have found denial of class

1  certification was foreseeable when there was insufficient

2  commonality within the class or where numerous punitive

3  plaintiffs brought individual claims.  Again, we've mentioned

4  Batze.   There's also a case Perkin versus San Diego Gas &

5  Electric.

6       Ms. Winegarner argues that denial of class certification

7  was not foreseeable because other lawsuits against Rite Aid had

8  been granted class certification.  A number of those are cited.

9  Ms. Winegarner has not, however, cited to any precedent that

10  supports this argument that a grant of class certification in

11  other cases against a defendant makes denial of class

12  certification unforeseeable in all future cases in which claims

13  are brought.  Class certification in Fenley was denied because

14  individual issues such as individual discretion predominated

15  over common ones.  The lack of commonality meant denial of

16  class certification was not unforeseeable.  Rite Aid has also

17  argued that denial was anticipated based on the number of

18  potential class members that filed motions to intervene in

19  Fenley.

20       Rite Aid has presented facts that at least 23 individuals

21  represented by Ms. Winegarner's counsel filed individual

22  actions between when Fenley was filed and when the class

23  certification was denied.  Rite Aid did not, however, provide

24  the total number of individuals that filed protective motions

25  during the pendency of Fenley including those not represented

1    by Ms. Winegarner's counsel.

2        I did not find that specific argument to be as persuasive.

3    It would have been more helpful to the Court to have been

4    presented with facts regarding the total number of punitive

5    plaintiffs that filed protective motions.  I don't think this

6    factor necessarily weighed in favor or against tolling.  It

7    more or less was a neutral factor.

8        The third factor is this unduly delaying in filing suit.

9    The California Court of Appeal has found that an extensive

10   delay in filing suit after denial of class certification makes

11   application of the tolling doctrine inequitable.  That's Perkin

12   versus San Diego Gas & Electric which the Court found that a

13   suit filed over two years after class certification denial

14   raised the concern that plaintiffs, quote, slept on their

15   rights, closed quote.  The Court looked at whether the

16   plaintiffs were aware of their damage claims, not whether they

17   had awareness of the class certification denial in finding the

18   delay to be unreasonable.  And again in Batze the Court of

19   Appeal affirmed that individuals who brought their claims over

20   a year after class certification was denied, quote,

21   unreasonably delayed, closed quote, assertion of their claims.

22       The Batze court did not assess whether these individuals

23   had notice of the class certification and denial.  Instead it

24   simply held that the trial court's finding of unreasonable

25   delay was not error.

1      In the case before the Court, Ms. Winegarner initiated her

2   lawsuit in February 2016, more than 18 months after class

3   certification was denied in Fenley.  In her affidavit filed in

4   support of the opposition brief, Ms. Winegarner asserts that

5   she learned about Fenley during its pendency, did not receive

6   notice that certification was denied, and filed the case once

7   she learned of that denial in early 2016.

8      Ms. Winegarner's oppositional brief does not provide any

9   citation in support of her argument that lack of notification

10   that class certification was denied excuses a lengthy delay in

11   filing a claim.  Instead her affidavit confirms that she did

12   have notice of Fenley and did not take timely action to

13   vindicate her rights.  This factor weighs in favor of Rite Aid

14   and against tolling.

15      And then finally the Court was asked to consider whether

16   the Fenley complaint sufficiently put defendants on notice of

17   the substance and nature of plaintiffs' claims such that

18   American Pipe tolling is justified.  In other words, was Rite

19   Aid unfairly prejudiced by the delay.

20      Rite Aid has argued that Ms. Winegarner's delay in filing

21   suit caused an unfair prejudice because it bears the burden of

22   proving that she was properly exempt from overtime, thus as

23   time has passed, Rite Aid has argued that memories have faded

24   such that it lost evidence critical to its defense.

25      I did not find that to be a particularly strong argument

1   and that Rite Aid failed to cite any cases that support its

2   argument about how it has been unfairly prejudiced aside from

3   its citation regarding the fact it has the burden of proving an

4   affirmative defense.  And although several years have passed

5   since Ms. Winegarner worked at Rite Aid, there also, as

6   Mr. Righetti pointed out, there wasn't anything specifically

7   presented to this Court that evidence has actually been

8   diminished or lost.

9         I also found it a bit strange for Rite Aid to argue or

10  contend that Fenley did not put it on notice of the substance

11  and nature of Ms. Winegarner's claims.  Fenley, by all

12  accounts, didn't involve Rite Aid managers asserting their

13  exempt status led to them being denied overtime payments as

14  well as meal and rest breaks, the exact claims that

15  Ms. Winegarner has presented in this lawsuit.

16        Given all those factors and taking them and looking at the

17  totality of the arguments and the evidence, where I do come out

18  however though is that aggregate weight of all these factors

19  weighs against tolling in this case.

20        Accordingly, the Court does believe and finds that Rite

21  Aid's argument on this point should be granted, and

22  Ms. Winegarner's claims should be limited by the applicable

23  statute of limitations.  Thus, the Court grants partial summary

24  judgment on these three claims, on these three issues, and

25  orders that Ms. Winegarner may not recover overtime wages or

1   other relief under her first cause of action for the period
2   before February 2nd, 2013.

3       The court orders that Ms. Winegarner may not recover
4   overtime wages or other relief under her second cause of
5   action, the violation of Business and Professions Code section
6   17200, for the period before February 2nd, 2012, and the Court
7   orders that Ms. Winegarner may not recover meal and rest period
8   premiums for the period before February 2nd, 2013.

9       The last issue raised in the partial -- the motion for
10  partial summary judgment is the recovery under section 17200.
11  Rite Aid has argued that Ms. Winegarner cannot assert claims
12  for meal and rest period premiums under section 17200 as a
13  matter of law because such premiums are not restitutionary, and
14  section 17200 provides for equitable remedies only such as
15  restitution.

16      Rite Aid argues in its briefs that section 226.7 premiums
17  compensate for the failure to provide the employee with a
18  compliant meal or rest period, but they are not wages.  They do
19  not compensate for labor performed, and therefore, they fall
20  outside of Business and Professions Code section 17200.

21      Ms. Winegarner counters that Rite Aid is collaterally
22  estopped from bringing this argument because it was denied in a
23  separate case in a different district and then also addresses
24  the merits of the argument as well.

25      As I indicated, I did not find the estoppel argument to be

1   persuasive.  Ms. Winegarner's version of collateral estoppel is

2   referred to in the Ninth Circuit as offensive nonmutual

3   collateral estoppel.  It's a version of the doctrine that

4   arises when the plaintiff seeks to estop a defendant from

5   relitigating an issue which the defendant previously litigated

6   and lost against another plaintiff.  And whether to apply

7   offensive nonmutual collateral estoppel is within the

8   discretion of the district court.

9       In this case given the lack of clarity on this issue,

10  whether 17200 permits recovery of rest and meal premiums and

11  the number of differing opinions in California federal district

12  courts, this is not a situation in which the Court believes

13  that application of nonmutual collateral estoppel would be fair

14  and appropriate.

15      So then turning to the merits of the argument, as I

16  indicated during oral argument, conceptually I find Rite Aid's

17  argument regarding the premiums to be persuasive.  The

18  arguments raised in the opening brief in particular the Court

19  found to be persuasive.  And again I recognize -- fully

20  recognize that judges are all over the map, unfortunately, on

21  this issue, even judges within this own -- our own district,

22  and hopefully we'll get some clarity either from the California

23  Supreme Court or from the Ninth Circuit at a minimum.

24      I'm in agreement with Judge O'Neill's opinion in the

25  Guerrero versus Halliburton Energy Services case.

 1    Judge O'Neill in that case found -- recognized that there were
 2    several California district courts that have found that
 3    payments due under Labor Code section 226.7 are recoverable as
 4    restitution under section 17200.  Judge O'Neill in Guerrero
 5    noted, however, that all of -- all but one of the cases that --
 6    or at least cited to him were decided before the California
 7    Supreme Court issued its decision in Kirby, and in Kirby the
 8    California Supreme Court explicitly held that the legal
 9    violation underlying a 226.7 claim is the nonprovision of meal
10    and rest periods and the corresponding failure to ensure the
11    health and welfare of employees, not the nonpayment of wages.
12    Judge O'Neill concluded that Kirby therefore strongly
13    undermines plaintiff's position and supports that of defendant.

14        In that case before Judge O'Neill defendant cited a 2016
15    decision from a court in the Northern District, Parson versus
16    Golden State.  Again, the Parson decision is now at issue given
17    the more recent case decided by the same judge in the Northern
18    District.

19        But despite that decision by Judge Tigar in the more recent
20    case following Parson, it's still the underlying concept that
21    this is, as the plaintiffs or defendants here have pointed out
22    and as Judge O'Neill pointed out, that this premium again is
23    primarily -- it's a statutory premium.  It's designed again to
24    make sure that employees or employers do something.

25        It's again not, at least in this Court's view, similar to a

1  wage that has been earned for work performed, and it's because

2  of that concept and because of the way the Court views that and

3  the way that Rite Aid has argued it that I found it persuasive

4  that again on this issue summary judgment should be granted in

5  favor of Rite Aid adopting Rite Aid's arguments with respect to

6  the 17200 issue.

7  And for those reasons, the Court would grant and does grant

8  partial summary judgment on this issue as well and find that

9  the plaintiff would not be entitled to recover, that

10  Ms. Winegarner may not recover meal and rest period premiums

11  under California Labor Code section 226.7 through her

12  California Business and Professions Code section 17200 claim.

13  So I grant partial summary judgment on all the issues

14  raised by the defendant in its entirety.

15  Mr. Wohl, you may prepare a written or the transcript

16  usually serves as the Court's order in this case. If you want

17  something on the docket, a lot of times the party that has been

18  granted summary judgment essentially attaches an order that

19  says partial summary judgment was granted for the reasons

20  stated by the Court and attach a transcript is probably the

21  easiest way to do it rather than draft your own order.

22  MR. WOHL:  Thank you, your Honor.

23  THE COURT:  But if you want to do that, try to get

24  that on the docket within the next 15 or 20 days.

25  MR. WOHL:  We sure will.

1              THE COURT:  Anything further I need to take up?  All

2    right.  Thank you both.

3              MR. WOHL:  Thank you very much for your time, your

4    Honor.

5              MR. RIGHETTI:  Thank you, your Honor.

6              (The proceedings adjourned at 2:49 p.m.)

7                             --oOo--

8    I certify that the foregoing is a correct transcript from the

9    record of proceedings in the above-entitled matter.

10                           /s/ Kacy Parker Barajas
                           _____
11                           KACY PARKER BARAJAS
                           CSR No. 10915, RMR, CRR, CRC
12

13

14

15

16

17

18

19

20

21

22

23

24

25